UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUDIPTA MAJUMDAR, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>      v.<br><br>ABEONA THERAPEUTICS INC., STEVEN H. ROUHANDEH, JOÃO SIFFERT, F. CARSTEN THIEL, CHRISTINE SILVERSTEIN, and STEPHEN B. THOMPSON,<br><br>          Defendants. | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Sudipta Majumdar ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Abeona Therapeutics Inc. ("Abeona" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Abeona securities between May 31, 2018 and September 23, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Abeona was incorporated in 1974 and is based in New York, New York.  The Company was formerly known as PlasmaTech Biopharmaceuticals, Inc. and changed its name to Abeona Therapeutics Inc. in June 2015.  Abeona is a clinical-stage biopharmaceutical company that purports to develop cell and gene therapies for life-threatening rare genetic diseases.

3.      Abeona's lead programs include, among other product candidates, EB-101 for the treatment of recessive dystrophic epidermolysis bullosa ("RDEB").  EB-101 is an autologous, gene-corrected cell therapy in which the normal COL7A1 gene is inserted into a patient's own skin cells (keratinocytes) and transplanted back to the patient to restore normal Type VII collagen expression and skin function.  From preliminary clinical data and expert input, the Company expected EB-101 to be a potential treatment choice for most wounds, and believes it is currently the only product candidate being evaluated as a treatment for larger wounds.

4.      Results from a completed Phase I/II study (Phase I/II gene transfer for recessive dystrophic epidermolysis bullosa (NCT01263379)) that enrolled seven patients with chronic RDEB wounds at Stanford University purportedly showed that EB-101 was well-tolerated and resulted in significant and durable wound healing.  The Phase I/II study purportedly showed

significant and durable healing of large chronic wounds, with up to five years of follow-up, with no reported serious adverse events observed.  Continuous Type VII collagen expression was purportedly observed for more than two years post treatment, with no detection of replication competent retrovirus ("RCR") up to four years.

5.     Abeona expected to initiate a pivotal clinical trial evaluating the potential of EB-101 for the treatment of RDEB in the middle of 2019.  The so-called VITAL Study would be a multicenter, randomized, Phase III clinical trial assessing ten to fifteen patients treated with EB-101.  The primary endpoint of the study would be the proportion of EB-101 treated wounds with >50% healing at three months, compared with untreated wound site on the same patient.  Secondary endpoints would include patient reported outcomes such as pain and itch and investigator global assessment of wounds.

6.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Abeona's Chemical, Manufacturing and Controls ("CMC") and internal controls and procedures and/or compliance policies were inadequate; (ii) as a result, the Company failed to provide sufficient data points on the transport stability of EB-101 to clinical sites, or else such transport stability was insufficient; (iii) consequently, it was foreseeable that the U.S. Food and Drug Administration ("FDA") would reject approval for the start of the VITAL Study until such issues were addressed; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

7.     On September 23, 2019, Abeona issued a press release announcing receipt of a clinical hold letter from the FDA, "clarifying that the FDA will not provide approval for the

Company to begin its planned Phase 3 clinical trial for EB-101 [a/k/a, the VITAL Study] until it submits to the FDA additional data points on transport stability of EB-101 to clinical sites" (the "September 2019 Press Release").  The September 2019 Press Release also disclosed that Abeona had been working with the FDA for at least a year to address issues with the Company's CMC.  Specifically, the September 2019 Press Release stated, in relevant part:

> Abeona . . . today announced that it has recently received a clinical hold letter from the U.S. Food and Drug Administration (FDA) clarifying that ***the FDA will not provide approval for the Company to begin its planned Phase 3 clinical trial for EB-101 until it submits to the FDA additional data points on transport stability of EB-101 to clinical sites. Over the last 12 months, the Company has worked closely with the FDA to address and narrow open Chemical, Manufacturing and Controls (CMC) items and has been working to resolve this one item identified in the FDA Clinical Hold Letter.*** The Company continues to anticipate receiving CMC clearance for VIITAL™ trial in Q4 2019.[1]

8.      On this news, Abeona's stock price fell $0.39 per share, or 11.96%, to close at $2.87 per share on September 23, 2019.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

---

[1] All emphases throughout the Complaint are added unless specified otherwise.

12.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Abeona is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Abeona securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Abeona is a Delaware corporation with principal executive offices located at 1330 Avenue of the Americas, 33rd Floor, New York, NY 10019.  The Company's stock trades in an efficient market on the Nasdaq Capital Markets ("NASDAQ") under the ticker symbol "ABEO."

16.     Defendant Steven H. Rouhandeh ("Rouhandeh") has served as Abeona's Executive Chairman and, in this capacity, as the Company's Principal Executive Officer, at all relevant times.

17.     Defendant João Siffert, M.D. ("Siffert") has served as Abeona's Chief Executive Officer ("CEO") since February 11, 2019.  Defendant Siffert joined Abeona as Head of Research & Development and Chief Medical Officer in 2018, and served as interim CEO since November of 2018.

18.     Defendant F. Carsten Thiel ("Thiel"), Ph.D., served as Abeona's CEO from March 29, 2018, until he was abruptly terminated on November 26, 2018, because of "personal misconduct that violated the Company's Code of Business Conduct and Ethics."  According to a press release issued by the Company, "Dr. Thiel's termination follow[ed] an investigation by independent members of the Company's Board of Directors and external counsel into allegations of misconduct towards colleagues that the Board concluded violated the Company's Code of Business Conduct and Ethics and was inconsistent with its expectations for Abeona's CEO."

19.     Defendant Christine Silverstein ("Silverstein") has served as Abeona's Chief Financial Officer and, in this capacity, as the Company's Principal Financial Officer, since January 8, 2019.  Defendant Silverstein was previously Senior Vice President, Finance and Investor Relations for Abeona.

20.     Defendant Stephen B. Thompson ("Thompson") served as Abeona's Vice President of Finance and, in this capacity, as the Company's Principal Financial and Accounting Officer, since before the start of the Class Period until he retired from the Company at the end of 2018.

21.     Defendants Rouhandeh, Siffert, Thiel, Silverstein, and Thompson are sometimes referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of Abeona's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Abeona's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Abeona, and their access to material information available to them but not to the public, the

Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Abeona was incorporated in 1974 and is based in New York, New York.   The Company was formerly known as PlasmaTech Biopharmaceuticals, Inc. and changed its name to Abeona Therapeutics Inc. in June 2015.   Abeona is a clinical-stage biopharmaceutical company that purports to develop cell and gene therapies for life-threatening rare genetic diseases.

24.     Abeona's lead programs include, among other product candidates, EB-101 for the treatment of RDEB.   EB-101 is an autologous, gene-corrected cell therapy in which the normal COL7A1 gene is inserted into a patient's own skin cells (keratinocytes) and transplanted back to the patient to restore normal Type VII collagen expression and skin function.   From preliminary clinical data and expert input, the Company expected EB-101 to be a potential treatment choice for most wounds, and believes it is currently the only product candidate being evaluated as a treatment for larger wounds.

25.     Results from a completed Phase I/II study (Phase I/II gene transfer for recessive dystrophic epidermolysis bullosa (NCT01263379)) that enrolled seven patients with chronic RDEB wounds at Stanford University purportedly showed that EB-101 was well-tolerated and resulted in significant and durable wound healing.   The Phase I/II study purportedly showed significant and durable healing of large chronic wounds, with up to five years of follow-up, with no reported serious adverse events observed.   Continuous Type VII collagen expression was

purportedly observed for more than two years post treatment, with no detection of RCR up to four years.

26.     Abeona expected to initiate a pivotal clinical trial evaluating the potential of EB-101 for the treatment of RDEB in the middle of 2019.  The so-called VITAL Study would be a multicenter, randomized, Phase III clinical trial assessing ten to fifteen patients treated with EB-101.  The primary endpoint of the study would be the proportion of EB-101 treated wounds with >50% healing at three months, compared with untreated wound site on the same patient. Secondary endpoints would include patient reported outcomes such as pain and itch and investigator global assessment of wounds.

**Materially False and Misleading Statements Issued During the Class Period**

27.     The Class Period begins on May 31, 2018, when Abeona issued a press release, during pre-market hours, announcing the opening of a commercial Good Manufacturing Practice ("GMP") gene and cell therapy manufacturing facility in Ohio (the "May 2018 Press Release"). The May 2018 Press Release touted the new GMP facility, called "The Elisa Linton Center for Rare Disease Therapies" (the "Elisa Linton Center"), as "hav[ing] the capability to manufacture clinical and commercial grade products over Abeona's multiple programs, including recessive dystrophic epidermolysis bullosa (RDEB)," which EB-101 was designed to treat.

28.     With respect to meeting Abeona's CMC requirements, the May 2018 Press Release additionally touted that "*[i]n addition to the production of the EB-101* . . ., the 6,000 square foot facility *will satisfy the necessary chemistry, manufacturing and controls (CMC) requirements for commercial development*," and that "[t]he second stage of the Company's manufacturing strategy has been initiated with the construction of an additional 20,000 square

foot facility that will be used to further meet the anticipated commercial demand for development programs in the longer term."

29.     Finally, the May 2018 Press Release included a quote from Defendant Thiel, who showered praise on the Elisa Linton Center's "internal manufacturing capabilities," which purportedly "bolster[ed] [the Company's] position for commercial readiness as [the Company] continue[d] to execute on [its] vision to bring these therapies to the patient communities that need them."

30.     On December 6, 2018, Abeona issued a press release announcing key pipeline updates during the Company's "2018 R&D Day," which touted the Elisa Linton Center, asserting that it had "established GMP manufacturing capability for EB-101" and could "produce clinical product, and has scalable capacity to support the potential commercial launch of EB-101."

31.     On March 18, 2019, Abeona filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K").  Aside from touting that "[t]he Company expect[ed] to initiate [the VITAL Study] . . . in the middle of 2019[,]" the 2018 10-K also championed Abeona's manufacturing processes and capabilities, assuring investors that, among other things, the Company had made "significant investments" in such processes, specifically with regard to its transportation and storage practices.  For example, the 2018 10-K stated, in relevant part:

> [W]e are working to advance our in-house manufacturing capabilities for our LZRSE COL7A1 retroviral autologous cell replacement therapy (EB-101) for the treatment of RDEB. The product is manufactured as a multilayer cellular sheet containing corrected keratinocytes that is fastened to a petrolatum gauze backing with surgical hemoclips. It is applied over wound areas, where they are expected to produce keratinocytes with normal Type VII collagen, providing wound coverage and allowing for wound healing.

\* \* \*

We have established and maintained strong and collaborative contract manufacturing relationships with third-party companies specializing in the manufacturing of gene therapy material to complement our process and assay development needs.

***We have made significant investments in developing optimized manufacturing processes and believe that our processes and methods provide a comprehensive manufacturing process developed to date for EB-101*** and AAV-based vector therapies, including:

- sufficient scale to support commercial manufacturing requirements for our product candidates;

- processes related to biopsy, cell collection, ***storage and transportation as part of manufacturing for EB-101***;

- processes related to product release testing for EB-101;

\* \* \*

- ***establishing transportation and packaging processes*** and materials for finished EB-101 product.

We believe these improvements, and our continued investment in our manufacturing platform, will enable us to develop best-in-class, next-generation gene therapy products. We are working towards receiving FDA cGMP validation of our facility in Cleveland to produce commercial supply of EB-101.

32.     The 2018 10-K also touted Abeona as an established leader with respect to commercial-scale gene and cell-therapy manufacturing and, while doing so, also asserted the strength of, as well as the focus placed upon, its CMC capabilities.  Specifically, the 2018 10-K stated, in relevant part:

**Establishing Leadership Position in Commercial-Scale Gene and Cell-Therapy Manufacturing.**

We established current Good Manufacturing Practice ("cGMP"), clinical-scale manufacturing capabilities for gene-corrected cell therapy and AAV-based gene therapies in our state-of-the-art Cleveland, OH facility. ***We believe that our platform provides us with distinct advantages, including flexibility, scale, reliability, and the potential for reduced development risk, cost, and faster times***

10

> *to market. We have focused on establishing internal Chemistry, Manufacturing and Controls ("CMC") capabilities that drive value for the organization through process development, assay development and manufacturing. We have also deployed robust quality systems governing all aspects of product lifecycle from preclinical through commercial stage.*

(First emphasis in original.)

33.    Additionally, the 2018 10-K assured investors that its disclosure controls and procedures were effective, stating, in relevant part:

> Our management, with the participation of our principal executive officer and principal financial officer, has evaluated the effectiveness of our disclosure controls and procedures . . . as of the end of the period covered by this Annual Report on Form 10-K. Based on such evaluation, our principal executive officer and principal financial officer have concluded that as of such date, our disclosure controls and procedures were effective.

34.    Appended as an exhibit to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants Rouhandeh and Silverstein certified that "[t]he [2018 10-K] fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

35.    On May 10, 2019, Abeona issued a press release announcing the Company's first quarter 2019 financial results and business highlights (the "May 2019 Press Release").  The May 2019 Press Release quoted Defendant Siffert, who touted the continued progress of the VITAL Study, which would utilize the clinical material produced at the Elisa Linton Center.  Defendant Siffert also asserted that Abeona had completed CMC preparation in advance of the VITAL Study's initiation.  Specifically, Defendant Siffert stated, in relevant part:

> We've had a great start to 2019, with continued progress across our pipeline, ***including the completion of CMC work in advance of initiating our Phase 3 VITAL™ clinical trial evaluating EB-101***, our gene-corrected cell therapy for

patients with recessive dystrophic epidermolysis bullosa . . . . ***The study, which will utilize clinical material produced at our Cleveland manufacturing facility, is on track to start mid-2019 following completion of ongoing FDA review.***

36.     The statements referenced in ¶¶ 27-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Abeona's CMC and internal controls and procedures and/or compliance policies were inadequate; (ii) as a result, the Company failed to provide sufficient data points on the transport stability of EB-101 to clinical sites, or else such transport stability was insufficient; (iii) consequently, it was foreseeable that the FDA would reject approval for the start of the VITAL Study until such issues were addressed; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

37.     On September 23, 2019, Abeona issued a press release announcing receipt of a clinical hold letter from the FDA, "clarifying that the FDA will not provide approval for the Company to begin its planned Phase 3 clinical trial for EB-101 [a/k/a, the VITAL Study] until it submits to the FDA additional data points on transport stability of EB-101 to clinical sites."  The September 2019 Press Release also disclosed that Abeona had been working with the FDA for at least a year to address issues with the Company's CMC.  Specifically, the September 2019 Press Release stated, in relevant part:

> Abeona . . . today announced that it has recently received a clinical hold letter from the U.S. Food and Drug Administration (FDA) clarifying that ***the FDA will not provide approval for the Company to begin its planned Phase 3 clinical trial for EB-101 until it submits to the FDA additional data points on transport stability of EB-101 to clinical sites. <u>Over the last 12 months</u>, the Company has worked closely with the FDA to address and narrow open Chemical,***

***Manufacturing and Controls (CMC) items and has been working to resolve this one item identified in the FDA Clinical Hold Letter.*** The Company continues to anticipate receiving CMC clearance for VIITAL™ trial in Q4 2019.

38.     The September 2019 Press Release also quoted Abeona's CEO, Defendant Siffert, who stated, in relevant part: "Initiating the VIITAL™ pivotal Phase 3 trial for EB-101 is the Company's top priority . . . . Efforts to gather supplemental data points on transport stability of EB-101 are ongoing and we are confident that the requested additional data will be submitted to the FDA promptly."

39.     On this news, Abeona's stock price fell $0.39 per share, or 11.96%, to close at $2.87 per share on September 23, 2019.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Abeona securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Abeona securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and

can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Abeona or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Abeona;

- whether the Individual Defendants caused Abeona to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Abeona securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Abeona securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Abeona securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Abeona securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Abeona securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly

and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Abeona securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Abeona's finances and business prospects.

54.      By virtue of their positions at Abeona, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.      Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Abeona, the Individual Defendants had knowledge of the details of Abeona's internal affairs.

56.      The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Abeona.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Abeona's

businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Abeona securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Abeona's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Abeona securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Abeona securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Abeona securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Abeona securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Abeona securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Abeona, and conducted and participated, directly and indirectly, in the conduct of Abeona's business affairs.  Because of their senior positions, they knew the adverse non-public information about Abeona's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Abeona's financial condition and results of operations, and to correct promptly any public statements issued by Abeona which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Abeona disseminated in the marketplace during the Class Period concerning Abeona's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Abeona to engage in the wrongful acts

complained of herein. The Individual Defendants therefore, were "controlling persons" of Abeona within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Abeona securities.

64.   Each of the Individual Defendants, therefore, acted as a controlling person of Abeona.   By reason of their senior management positions and/or being directors of Abeona, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Abeona to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Abeona and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Abeona.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  November 1, 2019

<div style="margin-left: 50%;">

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

HOLZER & HOLZER, LLC
Corey D. Holzer
1200 Ashwood Parkway
Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Attorneys for Plaintiff*

</div>

**CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned declares, as to the claims asserted under the federal securities laws, that:

Plaintiff has reviewed the initial complaint filed in this action.

Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| ABEO | 06/21/2018 | 10 | $15.6001 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| ABEO | | | |

During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ 10 _____ day of _____ October _____, 2019 in _____ Irvine _____, _____ California _____.

City                                      State

(Signature) X_____ _Sudipta Majumdar_ _____

DocuSigned by:
7B808A3C1EE24A8...

(Print Name)_____ Sudipta Majumdar _____

**Abeona Therapeutics Inc. (ABEO)**                                    **Majumdar, Sudipta**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 6/21/2018 | Purchase | 10 | $15.6001 |